## Case No. 15,992.

UNITED STATES v. PARKER et al.

[2 Dall. 373.][1]

Circuit Court, D. Pennsylvania. April Term, 1797.

CAPIAS AD RESPONDENDUM — ALIAS WRIT — RETROSPECTIVE TESTE.

[1. There is no effectual mode of issuing an alias capias ad respondendum but by testing it

[1] [Reported by A. J. Dallas, Esq.]

of the term to which the original writ was returnable; and there is no principle or usage which will authorize giving a retrospective teste as of April term, 1792, to an alias capias issued in August, 1796.]

[2. Cited in Hunter v. U. S., 5 Pet. (30 U. S.) 185, to the point that while a defendant is charged in execution, the debt is considered as satisfied, and that a discharge of one co-debtor is a discharge of all.]

A capias had issued in this cause against Daniel Parker, Wm. Duer, and John Holker, returnable to April term, 1792; and the marshal then returned, cepi corpus as to Duer, (who gave special bail in due time) and non sunt inventi, as to Parker and Holker. After a declaration was filed (reciting that the marshal had not found two of the defendants within his district, and proceeding against the other alone, upon the principles of the practice of the courts of Pennsylvania) after issue had been joined, and a variety of continuances, and other entries made upon the record, an original, not an alias, capias was issued, on the 8th of August, 1796, returnable to October term following, against Holker alone, upon which writ he was arrested; but on a hearing before Wilson, Justice, he was discharged on common bail.[2]

Mr. Rawle, for plaintiff, observed, that upon principles of common justice, and, he thought, upon principles of law too, when there were several defendants, and one only was taken on the first writ, process might issue, from time to time, to bring the others into court, without compelling the plaintiff to discontinue his action. By the 11th section of the judicial act (vol. 1, Swift's Ed., p. 58, c. 9 [1 Stat. 78]), it is provided, that the courts of the United States "shall have power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law." It is only incumbent on the plaintiff, therefore, to shew, that the present writ is necessary to the efficient exercise of the court's jurisdiction, and that it

---

[2] This action had been originally instituted in the supreme court of Pennsylvania; and Holker (who was then the only person arrested) pressed for a trial; but after an ineffectual opposition to an order for bringing on the cause, the attorney of the district entered a discontinuance. On this ground, I am informed, Judge Wilson directed common bail to be accepted from Holker in the second suit. In October term, the attorney of the district (Rawle) had obtained two rules: (1) That Holker shew cause, on the first day of the present term, why the writ issued should not be amended, conformably to the precept, which, it was alleged, directed an alias capias; and (2) that Holker shew cause why the plaintiff should not file common bail for him. It was agreed, however that the case should be argued, as if the last writ had been an alias capias, reciting the original capias and return: and the only question discussed was—whether an alias capias could issue, after the lapse of so many terms, and under the circumstances appearing upon the record, to arrest Holker, and make him a party to the existing suit?

is agreeable to the principles and usages of law. It is admitted, that the course of proceeding in England, is different. There, the defendant, who is not taken upon the writ, must be pursued to outlawry; and if he does not enter bail, in order to avoid the penal consequences, the plaintiff applies to the exchequer for a sequestration, and obtains payment from the outlaw's effects. 1 Strange, 473; 2 W. Bl. 759; 2 Bl. Comm. 283. But no mode of proceeding to outlawry in civil cases, is recognized, or prescribed, by any law of the federal, or state, government; and even in criminal cases, it is questionable, whether the state law could furnish a rule for the United States. Unless, therefore, the mode now pursued shall be sanctioned, endless inconveniences will arise in the administration of justice; for, the plaintiff cannot discontinue his action, without certainly losing bail as to one defendant, while he has only a chance of obtaining it from another. If then, there is a necessity of adopting some process to prevent a right being without a remedy, the present process will be found perfectly consistent with the principles and usages of law; and the informality of the continuances will not be of sufficient moment to attract the attention of the court. Sell. Prac. 400. Such process has been issued repeatedly, both in the supreme court and common pleas of Pennsylvania; though the regularity of it was never, indeed, contested. In England, however, the courts of law and chancery were bound by forms of writ, of almost immemorial antiquity, and always prescribed by the express authority of parliament; 'till the pressure of business, and the diversity of the cases that arose, produced the statute of Westm. 2, which authorized the clerks in chancery to frame writs in consimili casu; and in the exercise of that authority, from time to time, a considerable latitude has been taken. 4 Reeves' Hist. Eng. Law, 426; 2 Reeves' Hist. Eng. Law, 202; 2 Inst. 404, 407; Gilb. 2–4, 8; Coke, 48. An authority strictly analogous is given to the federal courts by the judicial act; and as there is no common officina brevium, it follows, of course, that each court must frame its own writs, according to the nature of the respective cases.

Gibson, Ingersoll & Dallas, for defendant, Holker, waived all objection to the mere form of the second capias; but insisted, that even an alias capias could not issue, unless it was tested of the term, to which the original was returned, and made returnable to the next immediately ensuing term.[3] They exemplified the mode of proceeding by outlawry in England, on a return of non est inventus as to one of several de-fendants; the force of the issue joined; and the impracticability of making an amendment in the declaration filed, to meet the new case to be brought upon the record; from 1 Strange, 473; 1 Wils. 78; 2 Sell. Prac. 389; 5 Com. Dig. 652. One defendant has given bail for the whole amount of the demand; the declaration expressly states, that Holker is not a party to the suit; and an issue is actually joined by Duer alone. If, therefore, the plaintiff succeeds in the present object, how is the record to be new modelled, upon any principle of law, or practice, so as to be rendered consistent with itself, and with the truth of the case? What will be the title of the declaration;—of what term shall it be filed;—what shall be the form of the old, or any new, issue;—and what is to be done with the original writ, and its return? Thus, the perplexity arising from the plaintiff's doctrine, (which, if it is just in one case, must be just in every case) is endless and insurmountable. Suppose the suit originated in the common pleas, but had been removed into the supreme court before the second writ issues:—from which court shall the second writ issue, and may one half of the cause be depending in the court above, and the other half in the court below? Suppose a verdict given on the first writ, before the second writ is returned:—can there be two verdicts for the same cause, how shall the amount be ascertained, or execution issue; and what is to be done if the verdicts should be contradictory? Suppose there are ten defendants to one contract, can it be reasonable or just, that there should be ten writs issued, or that ten bail bonds should be successively taken, for ten times the amount of the demand, or how is the bail to be modified and apportioned? Many other hypotheses might be fairly suggested to evince the extravagance, to which an allowance of the present motion would lead; and even after allowing it, there would arise another difficulty, in ascertaining in what action common bail should be entered for Holker, as there are now clearly two actions for the same cause on the records. See 5 Com. Dig. 297. But it is not intended to leave the plaintiff without a remedy. If the bail is satisfactory (and satisfactory bail can always be exacted, to the full amount of the demand upon the arrest of any one of the parties) the plaintiff may proceed to recover judgment, conformably to the state practice. If the plaintiff is not satisfied with the bail, then there may be a discontinuance; or, perhaps, the process may be kept alive, from term to term, till all the parties to the contract are brought into court.

Rawle, in reply. The consequences ascribed to the doctrine, in support of the motion, owe all their extravagance to the imagination of the opposite counsel. There is an important distinction between usages of law, and the practice of courts;—the latter

---

[3] IREDELL, Circuit Justice. Is it intended to maintain the writ on the footing of an alias, unless issued to the next term, after the return of the original capias?
Rawle. I think it can be so maintained.

being only a part of the former, and not, of course, as extensive. The question, therefore, should not be referred to the practice of the state courts, but should be decided by the usages of law, under the act of congress; and if it is shewn, that the mode of proceeding, now pursued, is not inconsistent with the state practice, while it is agreeable to the usages and principles of law, it should be sanctioned by the court. The process of outlawry in England is neither a dilatory, nor a precarious, remedy; for, all the writs may issue at once; the effect, by pronouncing the civil death of the party, cannot be prevented; and the plaintiff is entitled to receive his money from the public treasury out of the sequestered effects of the delinquent. Sell. Prac. Here, however, it would be idle to suspend all proceedings against the defendant who is arrested; since there is no legal process by which the effects of a non-appearing defendant can be made responsible; and it is uncertain when (if ever) he will come within the jurisdiction of the court. The process of outlawry was devised, principally, to get clear of the return of non est inventus, and to show that the plaintiff has done everything in his power to bring all the parties before the court; but it was never intended as an instrument of indulgence and benefit to the arrested defendant. It is asked, however, in what way the record and pleadings may be made consistent, on the insertion of Holker's name as a defendant? In the first place, it is to be answered, that whenever bail is entered, it has relation, by a legal retrospect, to the first day of the term, to which the capias was returnable; so, the court may order Holker's bail to be filed as of April term, 1792; and, thereupon, grant leave to imparl. As to the declaration, it may be amended to correspond with the fact; and even the case in 3 Wils. 78, shews in what manner this difficulty may be overcome. 1 Sell. Prac. 88, 260. Nor is it important how many defendants enter bail, or for what sum, since the plaintiff can recover no more than the amount of the demand for which the action is brought; and joint defendants may, in any case, give several bail bonds. The objection to the division and multiplication of suits, will, likewise, vanish, when it is recollected, that the same effect is produced by the severance of pleas, which may take place (as many precedents in Lilly's Entries establish) in every action against several defendants:—A joint issue, and a joint judgment are not indispensably requisite; and this court has no superior court, which might involve the inconveniency of a removal of the suit upon the first writ, before the second writ had issued. If, upon the whole, the process is a necessary instrument for the accomplishment of justice, it will be recognized and confirmed by the court, although it is not to be found in the ancient authorities of English law.

THE COURT, having taken from the 12th to the 16th of April, to advise upon the subject, delivered the following opinions, after a recapitulation of the entries on the record.

PETERS, District Judge. There is no controversy on the state of the action, as it respects Wm. Duer, who has given bail for the full amount demanded by the plaintiff; and, it is conceded, that the process used on the present occasion, could not have been used in England. In that country, the outlawry in a civil case is, perhaps, an adequate remedy for the plaintiff; but it is always optional with the defendant, whether he will submit to the rigor of the proceeding, or enter special bail. In Pennsylvania, likewise, a remedy has been introduced by long usage; the plaintiff being allowed, if he pleases, to proceed, at once, against the defendant who is arrested: And now, as the laws of the United States have prescribed no specific mode for a case of this description, it is proposed, under the authority of the 14th section of the judicial act, that the court shall frame, or rather sanction, a new form of writ, which the plaintiff deems adequate to the purpose, and consistent with the principles and usages of law. But I am not a friend to this species of judicial legislation; nor do I think it necessary, or proper, to exercise the power of the court, in the present instance; even admitting the existence of the power to the extent contended for. It appears sufficient to my mind, to defeat the present motion, that the alias is not tested at the return of the original capias, nor made returnable at the next ensuing term. 5 Com. Dig. 239. There is no principle, or usage of law, that will sanction the idea of giving a retrospective teste, as far back as April term, 1792, to an alias capias issued in August, 1796. I am, therefore, clearly of opinion, that, on this ground alone, both the rules must be discharged.

IREDELL, Circuit Justice. I agree, in substance, with the opinion of my Brother PETERS. Whatever idea may be entertained of the authority of the court, to adopt the practice of Pennsylvania, or to devise a new form of process upon the principles and usages of law, it does not appear to me, that the plaintiff would be regularly entitled, under the present circumstances, to the benefit of either proceeding; for, there is no effectual mode of issuing an alias capias, but by testing it of the term to which the original writ was returned. The practice of Pennsylvania may be reasonable; and its antiquity at least would certainly entitle it to respect; but that practice goes no farther, than to give to the plaintiff an option, either to suspend his proceedings 'till the non-appearing defendant can be arrested, or to waive, on filing a declaration, all chance against him, and enforce the suit only against the defendant, who is taken on the capias. In the present instance, it may have been expedient to adopt the latter course of the alter-

native, on account of Mr. Holker's permanent residence in another state; but being adopted, the plaintiff is bound by it. and cannot, even on the principles of the Pennsylvania practice, avail himself of Mr. Holker's casual visit to Philadelphia, without discontinuing the first action. What, indeed, would be the condition of the defendant, who is arrested, if a different construction were to prevail? He might be ready for trial; he might be able to prove that there was no cause of action; he might be desirous to avoid trouble and expense by a prompt confession of judgment; or he might be the principal, and the non-appearing defendant merely a surety, so that he could derive no advantage from the arrest of his colleague;—and yet he would be exposed to an indefinite term of imprisonment, or be held with his bail for an indefinite period in suspense, at the pleasure of a plaintiff, who should chuse to calculate upon any remote possibility of bringing all the defendants into court. The injustice and oppression to the defendant, furnishes a strong argument against the allowance of such a privilege to the plaintiff.

It is conceded, however, by the plaintiff's counsel, that the motion would be irregular, unless leave is given to file common bail for Mr. Holker, as of April term, 1792, when the original action was instituted. But why should such a retrospect be allowed? Mr. Holker was not then arrested; and shall the court countenance a mere fiction;—a fiction not indispensable to justice, unknown to the law, and directly adverse to the truth of the case, exhibited for a number of years upon the record? No:—I am an enemy to every species of fictions. The fictions which have been incorporated into the law by long usage, (and, I believe, the cases of ejectment and common recovery afford the only fictions recognized in America) must be sustained; but as far as I can prevent the introduction of novelties of this nature, I shall be assiduous to do so. All the entries upon the record were true and regular at the time of making them. There is, therefore, no error to amend; but the court is asked, for the convenience of the United States, arbitrarily to abolish the writ and its return, the declaration, the issue, and the continuances; and not only to undo all that has been previously done, but by an entry of common bail, to ingraft, in effect, this falsehood upon the record, that Mr. Holker was arrested in April, 1792. But after all, I will not anticipate an opinion, upon a case in which an alias shall be regularly taken out, and continued, from term to term: though my present impressions are unfavorable, even on that ground to the plaintiff's doctrine. The multiplication of suits, the perplexity of entries, and the oppressive vexation of successive bail bonds, each for the full amount of the demand, are effects that could not be easily tolerated in the administration of justice. I have not heard, during the discussion, of any principle, or usage, of law, that would

reconcile them to my mind: but this is not the foundation of the present decision; for, the irregularity in the teste and return of the alias capias is a sufficient reason to reject the plaintiff's motion.

The rules discharged.[4]

CHASE, Circuit Justice. The whole proceeding is to my mind unintelligible and irregular. There is only one of the parties to the contract, and only one of the defendants named in the writ before the court; and no process of outlawry has been prosecuted against the others; how shall we proceed to give judgment? Again: to what is the plea of non assumpsit to be applied? Is it, that the appearing defendant did not assume himself, or that he did not jointly assume with the other defendants? And how comes the plea of the statute of limitations to be added, without the leave of the court? But the counsel will have time to reflect upon these difficulties. For, the jury are not sworn, even in this irregular state of the record, to try the issues between the parties; and therefore, the court, on its own authority, will direct the juror last qualified to be withdrawn.

A juror was, accordingly, withdrawn, and the action continued till the next term.

[4] The cause (which was indebitatus assumpsit) came on for trial before CHASE and PETERS, Justices, at April term, 1798, when, after the opening was commenced by Rawle, for the plaintiff, it was discovered that the plea of "non assumpsit" was entered in short, and that the statute of limitations had, also, been pleaded; though the jury were only sworn to try the issue, and not the issues, joined between the parties.